<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BROTHERS HOLDING LLC, <br><br> Plaintiff, <br><br> v. <br><br> TOWNSHIP OF WEEHAWKEN, *et al.*, <br><br> Defendants. | Case No. 2:23-cv-03185 (BRM) (LDW) <br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Township of Weehawken ("Weehawken") and Township of Weehawken Rent Control Board's (the "Board") (collectively, "Defendants") Motion to Dismiss (ECF No. 10) Plaintiff Brothers Holding LLC's ("Plaintiff") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition on November 27, 2023. (ECF No. 17.) Defendants filed a reply on January 12, 2024. (ECF No. 23.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

## I.  BACKGROUND

### A.  Factual Background

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v.*

*Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This case deals with the application of a rent control ordinance (the "Ordinance") to Plaintiff's property at 845 Boulevard East, Weehawken, New Jersey (the "Property"). (ECF No. 1 ¶ 4.) LGE Realty (the "Prior Owner") purchased the property in 1993, including the relevant Unit 3D. (*Id.* ¶ 24.) Unit 3D was occupied by a tenant until June 2010. (*Id.* ¶ 25.) At the time the tenant vacated the unit, the rent was $740.41. (*Id.*) After the prior tenant vacated the unit, the Prior Owner began occupying the unit. (*Id.* ¶ 26.) Between 2012 and 2013, the Prior Owner made renovations to Unit 3D, and a new base rent of $1,836 was set. (*Id.* ¶ 27.) The Prior Owner did not seek or obtain a capital improvement increase for this work. (*Id.* ¶ 28.) The Prior Owner lived in and occupied Unit 3D until September 2014, when a new tenant, Hakan Ozcelik ("Ozcelik") moved into the unit at a monthly rent of approximately $2,000. (*Id.* ¶¶ 29–31.) The rent amounts were noted in Rent Registration Statements filed by the Prior Owner. (*Id.* ¶ 32.)

In December 2018, Plaintiff purchased several units in the property, including Unit 3D, from the Prior Owner. (*Id.* ¶ 33.) At the time Plaintiff purchased the property, Ozcelik remained the tenant of Unit 3D, the legally permissible rent was $2,306.04 per the Rent Registration Statements for the Property, and Ozcelik paid $2,044.00 in rent due to a hardship concession from the Prior Owner. (*Id.* ¶ 34.) In July 2020, Ozcelik filed a complaint with the Board regarding his rent. (*Id.* ¶ 37.) At the time, the rent for Ozcelik's unit, 3D, was $2,082.00. (*Id.*) The Board did not immediately inform Plaintiff of Ozcelik's complaint or allow Plaintiff to file a response. (*Id.* ¶ 39.) By letter dated August 24, 2020, the Board informed Plaintiff that Ozcelik had made a complaint

regarding the rent for Unit 3D, and that the Board would seek an overcharge. (*Id.* ¶ 40.) The notice also informed Plaintiff that a special meeting of the Board was scheduled for September 2, 2020. (*Id.*) The meeting was adjourned to April 13, 2021, at which time Ozcelik's complaint was addressed and the rent for Unit 3D was discussed with Plaintiff. (*Id.* ¶¶ 41–42.) At the meeting, Plaintiff set forth the history of the Property and Unit 3D and proceeded to memorialize the arguments he made at the meeting via a letter to the Board dated April 17, 2021. (*Id.* ¶¶ 43–44.) The letter stated:

> (i) that the Prior Owner had previously occupied Unit 3D, during which it had made renovations to the unit, (ii) at the time the Prior Owner occupied the unit, the applicable Ordinance provided that an owner-occupied dwelling was not subject to rent control, (iii) that the Prior Owner was not required to submit a capital improvement application to increase the rent for the unit after the renovations were complete because it was owner-occupied (and not occupied by a tenant, and thus not subject to the rent control Ordinance), (iv) as a result of the renovations and owner-occupancy of the unit, a new base rent was set, and (v) the limitations on what constitutes an owner-occupied dwelling were not in place until 2013, when Ordinance 12-2013 was passed. As such, the rents charged by the Prior Owner and Plaintiff for Unit 3D to Ozcelik after the unit was no longer owner-occupied were legally permissible.

(*Id.* ¶ 44.)

Over the course of multiple meetings in 2022, the Board calculated a new rent for Unit 3D of $761.78 in 2014, and $1,070.85 as of January 2023. (*Id.* ¶¶ 45–46.) As a result, the Board assessed an overcharge of $94,752.75 through January 2023 against Plaintiff. (*Id.* ¶ 46.) The overcharge amount included approximately $72,000.00 of rents collected by the Prior Owner of the Property before Plaintiff's purchase of the Property. (*Id.* ¶ 77.) Plaintiff attempted to schedule a meeting with the Mayor of Weehawken, Richard Turner, regarding the decision, but was unable to do so. (*Id.* ¶¶ 52–55.) The Board ultimately scheduled the matter for a final meeting on April 19, 2023. (*Id.* ¶ 56.) At this meeting, the Board heard no argument from Plaintiff; instead, the

Board informed Plaintiff that it had finalized its rent and overcharge calculations and would enter a final resolution ("Resolution") memorializing the calculations shortly. (*Id.*) On April 27, 2023, Plaintiff was served with the Board's Resolution, which stated the Board rejected Plaintiff's arguments and submissions, had decided to reduce the base rent for Unit 3D, and assessed Plaintiff an overcharge of $94,752.75. (*Id.* ¶¶ 57–58.)

### B.  Procedural History

Plaintiff filed its Complaint on June 11, 2023 against Defendants alleging: (I) a taking under the Fifth and Fourteenth Amendments of the United States Constitution ("Constitution") (ECF No. 1 ¶¶ 62–66); (II) deprivation of substantive due process under the Fourteenth Amendment of the Constitution (*id.* ¶¶ 67–77); (III) deprivation of procedural due process under the Fourteenth Amendment of the Constitution (*id.* ¶¶ 78–85); and (IV) a claim in lieu of prerogative writ against the Board's denial of Plaintiff's appeal (*id.* ¶¶ 86–87). On September 1, 2023, Plaintiff filed a request for the Clerk's entry of Defendants' default (ECF No. 6) which was granted on September 8, 2023. On September 11, 2023, the entry of default was vacated pursuant to a consent order. (ECF No. 8.) Defendants filed this Motion to Dismiss on October 13, 2023. (ECF No. 10.) Plaintiff filed an opposition on November 27, 2023. (ECF No. 17.) Defendants filed a reply on January 12, 2024. (ECF No. 23.)

### II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.   DECISION

### A.   Count I (Regulatory Taking)

Defendants argue Count I of the Complaint, which alleges a regulatory taking contrary to the Fifth and Fourteenth Amendments, should be dismissed as Plaintiff neither alleges that it has lost all economically beneficial use of the property, nor how any purported regulatory taking impacted the value of its property unfairly or unjustly. (ECF No. 10-1 at 5–8.) Defendants assert

6

Plaintiff has failed to show the deprivation of all economically beneficial use of the property needed to allege a "*per se*" taking, as it is apparent from the Complaint that Plaintiff will continue to receive rental payments from Ozcelik and other tenants despite the Board's decision. (*Id.* at 6.) Defendants further claim Plaintiff fails to allege a regulatory taking, as (1) the Complaint "fails to set forth any specific facts demonstrating or quantifying the overall impact of the [Board's] actions on the value of their entire property," and (2) the Complaint "fails to set forth facts which plausibly suggest that the 'character of the government's actions,' i.e., the [Board's] determination to reduce applicable rent, was unfair or unjust." (*Id.* at 7–8.)

Plaintiff argues the Complaint sets out the necessary elements to allege a regulatory taking under the *Penn Central* standard. (ECF No. 17 at 9–16.) Plaintiff asserts the property interests in question are (1) the right to the use and enjoyment of the property it owns in fee simple interest, "(2) [the] right to the use and enjoyment of the leases which it entered into for the express purpose of its rental businesses; (3) [the] right[] to its investment backed expectations; and (4) [the] right to not have its rents illegally lowered to absurd amounts." (*Id.* at 10.) Plaintiff contends its property was subject to a "regulatory taking" by Defendants, asserting that such a taking need not deprive it of the entire value of the property. (*Id.* at 11.) Plaintiff claims its reasonable, investment-backed expectations were violated by the failure of Defendants to adhere to the Ordinance, as well as their suppression of "competent evidence of the actual, legal rents, [which] rendered the appeal before the Rent Leveling Board a farce all to obtained [*sic*] a preordained, illegal result, which interfered with Plaintiff's property rights in its property and with Plaintiff's existing – legal – leases with its tenant." (*Id.* at 13.) Plaintiff asserts the economic impact of the regulation militates in favor of finding a taking, as Defendants' actions have had "a severe and economic impact due to the egregiously lowered rent for the unit at issue (from $2,044.00 to $1,070.85) and the unfounded

imposition of the requirement that Plaintiff refund approximately $72,000 of purported rent overcharges that had been received by the [P]rior [O]wner of the property." (*Id.* at 15.) Finally, Plaintiff submits Defendants' bad faith means the nature of their actions weigh in favor of finding a taking, and argues this bad faith is evidenced by Defendants ignoring applicable ordinances, failing to notify Plaintiff of Ozcelik's complaint, ignoring Plaintiff's proffered evidence on various issues, and charging Plaintiff rent overcharges based on payments made to the previous landlord. (*Id.* at 15–16.)

Defendants reply that courts have upheld many regulations under the Fifth and Fourteenth Amendments which diminish the value of properties, and that Plaintiff has failed to show the regulation denied it of all economically valuable use of the property, as the Complaint indicates it is still able to collect rent from Ozcelik and other tenants. (ECF No. 23 at 2.)

A government regulation may constitute a regulatory taking of property when it is "so onerous that its effect is tantamount to a direct appropriation or ouster," thereby creating a compensable claim under the Fifth Amendment. *Pompey Coal Co. v. Borough of Jessup*, Civ. A. No. 20-00358, 2023 WL 3260534, at *5 (M.D. Pa. May 4, 2023) (quoting *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005)). When a party asserts a regulatory taking, a court will engage in a case-specific factual inquiry to determine whether a taking has occurred. *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370–71 (3d Cir. 2012). There are two types of regulatory takings, "(1) takings per se or total takings, where the regulation denies all economically beneficial productive use of the property, and (2) partial takings that, though not rendering the property idle, require compensation." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022). For both types of taking, the Court must first determine if there are any legally cognizable property interests at issue. *Id.*; *see also In re Trs. of Conneaut Lake Park*, 855 F.3d 519,

526 (3d Cir. 2017). The Court must also determine whether a final decision has been reached by the government regarding the applicability of the regulation to the property in question. *Ogontz Fire Co. v. Cheltenham Twp.*, Civ. A. No. 23-569, 2024 WL 1120105, at \*15 (E.D. Pa. Mar. 14, 2024). In assessing whether a partial taking has occurred, the Court considers three non-dispositive factors "(1) '[t]he economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) the character of the governmental action." *Ogontz Fire Co.*, 2024 WL 1120105, at \*14 (quoting *New Jersey v. United States*, 91 F.3d 463, 468 (3d Cir. 1996)). For a partial taking to be alleged, the regulatory action must be "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Nekrilov*, 45 F.4th at 678. Ultimately, "there is no set formula" when assessing a regulatory taking, rather, courts will weigh the three factors on case-specific basis. *Am. Express Travel Related Servs., Inc.*, 669 F.3d at 370–71.

The Court will apply the *Penn Central* analysis to both the retroactive and prospective portions of Plaintiff's takings claim. The Court notes that Plaintiff challenges the Board's decision both retroactively and prospectively, attacking both the prospective reduction in base rent, and the retroactive overcharge levied against it. (ECF No. 1 ¶ 72.) In the caselaw considering allegations of retroactive takings based on changes to statutes or regulations, courts have indicated that the *Penn Central* test continues to apply. *Cf. In re Burkholder*, 11 B.R. 346, 349 (Bankr. E.D. Pa. 1981) (Noting *Penn Central* applies to retroactive takings claims and holding that "[w]hile the retroactive application of legislation may be a consideration in determining the fairness and reasonableness of particular legislation, it is established that the retroactive scope of a statute may properly affect property rights which have vested"); *Kane v. United States*, 942 F. Supp. 233, 234

(E.D. Pa. 1996) ("Retroactive application of a tax statute satisfies due process [and does not constitute a retroactive taking] so long as it is rationally related to a legitimate government purpose."); *Peabody Coal Co., LLC v. Barnhart*, 469 F. Supp. 2d 240, 247 (D. Del. 2007) (noting a plurality of the Supreme Court applied the *Penn Central* factors to find the Coal Act constituted a retroactive taking (quoting *E. Enters. v. Apfel*, 524 U.S. 498, 529 (1998)).

### 1. Legally Cognizable Property Interest

Here, it is clear Plaintiff has alleged a legally cognizable property interest in the Property, as it claims it is now the owner and landlord of the impacted Unit 3D. (ECF No. 1 ¶ 33); *see OM 309-311 6th St., LLC v. City of Union City*, Civ. A. No. 21-12051, 2022 WL 855769, at *13 (D.N.J. Mar. 23, 2022) (holding plaintiff landlord had a clear and "uncontroversial" property interest in apartment which they owned); *Nekrilov v. City of Jersey City*, 528 F. Supp. 3d 252, 267 (D.N.J. 2021) (holding property interests such as "the right to use and enjoyment of their properties held in fee simple interest, the right to use and enjoyment of long-term leases, and the contractual interest in short-term rental bookings which would [be] abrogated by [the ordinance]" were legally cognizable and "uncontroversial"); *cf. Turcar, LLC v. United States*, Civ. A. No. 07-14975, 2009 WL 3241968, at *2 (E.D. Mich. Oct. 8, 2009) (in the case of a wrongful levy tax claim under I.R.C. § 7426(a)(1), "[a] legally cognizable interest is a fee simple or equivalent interest, a possessory interest, or a security interest"). Because Plaintiff has claimed it both owns the relevant unit and is entitled to rent from the tenant of the unit, the Complaint has sufficiently pled a legally cognizable property interest.

### 2. Finality of Government Decision

The Complaint also alleges a final decision by the Board regarding the application of the Ordinance to the Property. Plaintiff alleges it was served with the Board's Resolution on April 27,

2023, which assessed Plaintiff an overcharge of $94,752.25 and reduced the base rent for Unit 3D. (ECF No. 1 ¶¶ 57–58.) This Resolution indicated the conclusion of the Board's process regarding the Unit, thereby granting Plaintiff standing to commence litigation. *See N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1225–26 (10th Cir. 2021) (noting that "[a] regulatory takings claim is therefore likely to have ripened once . . . the permissible uses of the property are known to a reasonable degree of certainty" (quoting *Palazollo v. Rhode Island*, 533 U.S. 606, 620 (2001)) and that "the 'finality requirement is relatively modest' and 'nothing more than *de facto* finality is necessary'" (quoting *Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 478 (2021)); *Bldg. & Realty Inst. of Westchester and Putnam Cntys., Inc. v. New York*, Civ. A. No. 19-11285, 2021 WL 4198332, at *20 (S.D.N.Y. Sept. 14, 2021) (finding that a takings claim is ripe as soon as the government action is finalized, and the claimant does not need to first seek compensation from the state before raising the claim); *cf. Javino v. Town of Brookhaven*, Civ. A. No. 06-1245, 2008 WL 656672, at *4 (E.D.N.Y. Mar. 4, 2008) ("Plaintiff's regulatory taking claim is not ripe because Plaintiff has not obtained a final decision from any local authority nor has he exhausted the variance process available to him with the local town agencies.").

### 3.   Economic Impact

Plaintiff fails to adequately allege sufficient economic impact to constitute a taking, as Courts are clear that the partial diminution in the value of the property will cause a taking only when the "regulation 'has nearly the same effect as the complete destruction of [the property] rights' of the owner.'" *Tulio v. Lansdale Borough*, 660 F. Supp. 3d 368, 381 (E.D. Pa. 2023) (quoting *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1033 (3d Cir. 1987)); *see also Forrest Hill Cmty. Ass'n, Inc. v. Pub. Servs. Elec. & Gas Co.*, Civ. A. No. 19-16992, 2022 WL 3586392, at *13 (D.N.J. Aug. 21, 2022) ("[T]he Supreme Court has been clear 'that mere diminution in the

value of property, however serious, is insufficient to demonstrate a taking.'" (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993))); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 165 (S.D.N.Y. 2020) ("The economic impact of EO 202.28 can only qualify as a regulatory taking if it 'effectively prevented [Plaintiffs] from making any economic use of [their] property.'" (quoting *Sherman v. Town of Chester*, 752 F.3d 554, 565 (2d Cir. 2014))). Here, Plaintiff only alleges an approximately 50% diminution in the rental value of the property from a monthly rent of $2,082.00 in July 2020 (ECF No. 1 ¶ 37) to $1,070.85 in January 2023 (*id.* ¶ 46). The Court finds that this partial reduction in the rent collected from Unit 3D cannot be said to have "nearly the same effect as the complete destruction of [the property] rights' of the owner,'" *Tulio,* 660 F. Supp. 3d at 381 (quoting *Pace Res., Inc.*, 808 F.2d at 1033), as the Complaint alleges that Plaintiff maintained 50% of the rental value of the property after the application of the regulation. *See Colony Cove Props. v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018) ("Even assuming that the lost rental income asserted by Colony—$5.7 million—equates to diminution in property value, that reduction would only be 24.8% of the assumed $23 million pre-deprivation value of the Property, far too small to establish a regulatory taking."). Therefore, the economic impact of the action clearly weighs against a finding that Plaintiff has sufficiently alleged a regulatory taking.

### 4.     **Investment-Backed Expectations**

Plaintiff's investment-backed expectations also weigh slightly against an allegation of regulatory taking, even if the Board unilaterally changed the Ordinance, as landlords of rental properties cannot expect the regulation of their property to remain static. Rather, courts have found that landlords of rental properties must expect that regulation and taxation of their property may change at times. *See Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015)

("Just as '[t]hose who do business in [a] regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end,' those who buy into a regulated field such as the mobile home park industry cannot object when regulation is later imposed." (quoting *Concrete Pipe*, 508 U.S. at 645)); *cf. S. Cal. Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F. Supp. 3d 853, 866 (S.D. Cal. 2021) (holding COVID-19 eviction moratorium did not upset investment-backed expectations of landlords because "the business area of renting residential property is heavily-regulated, therefore landlords could have expected additional ordinances"); *Elmsford*, 469 F. Supp. 3d at 166–67 (holding New York eviction moratorium did not violate landlord's investment-backed expectations because landlords operate in a heavily regulated industry where further regulation could be expected, and because "New York landlords do not enjoy a constitutional right to realize a profit from their rental properties – let alone all the profits contemplated in each of their individual rental agreements"). The Court therefore finds it insufficient for Plaintiff to claim the Board's rent adjustment upset its reasonable investment-backed expectations, because it is well-established that landlords of rental units must anticipate potential changes in regulation.

Nonetheless, the Court acknowledges that Plaintiff has also argued the Board acted arbitrarily and in contravention of the applicable ordinances in adjusting the rent for Unit 3D (ECF No. 1 ¶ 58), which at least one court has found sufficient to allege a contravention of investment-backed expectations. *See Holcim-NER, Inc. v. Town of Swampscott*, 671 F. Supp. 3d 84, 93–94 (D. Mass. 2023) (noting that while plaintiff's expectation was diminished due to operating in a highly-regulated industry, and plaintiff cannot expect government regulation to remain the same in perpetuity, "[a]ccording to plaintiff, defendants abandoned their long-standing permitting practices, acted arbitrarily and imposed unjustified and bias-driven restrictions. Given such

allegations at this stage of the proceedings, the Court acknowledges the reasonableness of plaintiff's investment-backed expectations"); *OM 309-311 6th St., LLC*, 2022 WL 855769, at \*15 ("It should go without saying that one of any property owner's reasonable investment-backed expectations is the expectation that the government will follow the law. It is plausibly alleged that by refusing to follow the law, the Board interfered with plaintiffs' investment-backed expectations.").

The Court also acknowledges that the cases on rent control ordinances may be less applicable to the retroactive portion of Plaintiff's takings claim. Nonetheless, the Court finds that the retroactive application of the Ordinance does not significantly change the investment-backed expectations of Plaintiff. Given the lack of precedent directly on point, the Court will consider the rent control cases as analogous authority which inform the level of Plaintiff's investment-backed expectations as a rental landlord. When considered for this purpose, the precedent still indicates that a rental landlord has a relatively low level of investment-backed expectations, given the heavily regulated nature of the field and the fact that rental landlords do not enjoy a right to profit from their properties. *See Elmsford*, 469 F. Supp. 3d at 166–67; *S. Cal. Rental Hous. Ass'n*, 550 F. Supp. 3d at 866. The Court also notes that analogous precedent on retroactive takings in other contexts indicate that a property owner must anticipate retroactive changes to their property rights when such changes are made in the public interest. *Cf. In re Burkholder*, 11 B.R. 346, 349 (Bankr. E.D. Pa. 1981) (Holding that "[w]hile the retroactive application of legislation may be a consideration in determining the fairness and reasonableness of particular legislation, it is established that the retroactive scope of a statute may properly affect property rights which have vested"); *Welch v. Henry*, 305 U.S. 134, 150 (1938) ("[W]e think that the 'recent transactions' to which this Court has declared a tax law may be retroactively applied, must be taken to include the

14

receipt of income during the year of the legislative session preceding that of its enactment." (quoting *Cooper v. United States*, 280 U.S. 409, 411 (1930))); *Kane v. United States*, 942 F. Supp. 233, 234 (E.D. Pa. 1996) ("Retroactive application of a tax statute satisfies due process [and does not constitute a retroactive taking] so long as it is rationally related to a legitimate government purpose."); *King v. Unites States*, 165 Fed. Cl. 613, 646 (Fed. Cl. 2023) (holding that retroactive changes to pension plan did not constitute regulatory taking in part because "[l]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations even though the effect of the legislation is to impose a new duty or liability based on past acts" (quoting *Concrete Pipe*, 508 U.S. at 646)). Therefore, the retroactive application of the Ordinance does not, by itself, significantly change the investment-backed expectations of Plaintiff.

Overall, the Court finds the precedent holding that rental landlords must anticipate potential changes to the regulation of their property to be more applicable to this case. In takings claims, the Court must focus on the expectation of Plaintiff as a rental landlord. The law is clear that rental landlords are expected to adapt to sudden changes to the regulation of their property, particularly when one considers the COVID-19 eviction moratorium cases cited above. *See S. Cal. Rental Hous. Ass'n*, 550 F. Supp. 3d at 866; *see also Elmsford*, 469 F. Supp. 3d 148 at 166–67; *335-7 LLC v. City of New York*, 524 F. Supp. 3d 316, 333 (S.D.N.Y. 2021) (noting that "[a] landlord is 'not guaranteed a reasonable return on its investment,'" and that "lack of profit does not establish a regulatory taking if the property use allowed by the regulation is sufficiently desirable to permit property owners to sell the property to someone for that use" (quoting *Greystone Hotel Co. v. City of New York*, 13 F. Supp. 2d 524, 528 (S.D.N.Y. 1998))). The Court therefore finds that, since Plaintiff is a landlord in a highly regulated industry and should have expected sudden changes to the regulation of its property, Plaintiff's investment-backed expectations weigh slightly against an

allegation of a regulatory taking. This holding aligns with the weight of the precedent which has generally dismissed challenges to rent control laws and their application.

### 5.        Character of the Governmental Action

The final factor, the character of the governmental action, also weighs against Plaintiff, as government actions directed towards the welfare of tenants and the common good of the population are generally seen to be appropriate uses of government power. In *Penn Central*, the Supreme Court stated "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). Courts have routinely held that rent control ordinances constitute a type of public program meant to promote the common good. *See Woodstone Ltd. P'ship v. City of Saint Paul, Minnesota*, 674 F. Supp. 3d 571, 601 (D. Minn. 2023) (finding the character of a rent-stabilization ordinance to be akin to a public program rather than a property invasion, as plaintiffs still had the right to possess, sell, and lease their properties); *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 555 (2d Cir. 2023) (finding character of rent stabilization law weighed against finding of taking because the law was directed toward public interests and welfare); *335-7 LLC*, 524 F. Supp. 3d at 333 (holding character of rent stabilization ordinance weighed against finding of taking because "the RSL is a longstanding and far reaching regulatory scheme that benefits all New Yorkers").

Plaintiff has also failed to allege that the character of the governmental action was transformed from one enforcing the Ordinance for the public good to an action motivated by bad faith and persecution against Plaintiff, as Plaintiff's pleading on the issue of bad faith is generally conclusory. There are some cases which find the character of governmental enforcement of rent

control laws changes when a plaintiff alleges bad faith by the enforcer. *See Holcim-NER, Inc.*, 671 F. Supp. 3d at 94 ("[T]he exercise of a town's police power ostensibly taken to promote the common good may constitute a taking if it 'does not substantially advance legitimate state interests.'" (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485 (1987))); *see also OM 309-311 6th St., LLC*, 2022 WL 855769, at *16 (finding character of the government action weighed in favor of a taking as facts of the complaint showed "that the Board acted in bad faith and without regard for the law"). In this case, although Plaintiff alleges the Board did not comply with the Ordinance, Plaintiff's pleading on the issue of bad faith is conclusory. The Complaint claims the Board acted arbitrarily and capriciously (ECF No. 1 ¶ 59) but makes no specific allegation of bias or bad faith against Plaintiff. In particular, the Complaint does not allege the Board had a motive other than the public interest, such as bias or animus against the Plaintiff. Therefore, given the lack of pleading regarding the Board's motives, the Complaint has failed to allege the Board had a motive other than the public interest in applying the Ordinance. Therefore, the character of the governmental action weighs against an allegation of regulatory taking.

### 6.    Conclusion on Count I

Although Plaintiff's regulatory takings claim will be dismissed without prejudice against Defendants for these reasons, this analysis is a close call made based on the failure of the Complaint to (1) plead an economic impact from the decision of qualitatively the same impact as complete destruction of the property right, (2) plead the Board's action, and its consequences, to be beyond what a reasonable rental landlord would expect, and (3) plead the Board's specific bad faith or bias against Plaintiff. The Court acknowledges there may be circumstances where a rent stabilization board's decision may be so outside the bounds of any reasonable interpretation of the applicable ordinance as to transform that decision from an application of a rent ordinance in the

public interest to an improper, arbitrary, and biased targeting of a property owner. In order to plead that such an action constitutes a regulatory taking, a complaint would clearly need to claim the board's action was of a different character and motivation than the normal enforcement of a rent stabilization ordinance with respect to its severity of impact, its treatment of the landlord, and its motivation. *See Tulio,* 660 F. Supp. 3d 368, 381 (E.D. Pa. 2023) (finding that the partial diminution in the value of the property will cause a taking only when the "regulation 'has nearly the same effect as the complete destruction of [the property] rights' of the owner'" (quoting *Pace Res., Inc.* 808 F.2d at 1033)); *Holcim-NER, Inc.*, 671 F. Supp. 3d at 93–94 (noting that while plaintiff's expectation was diminished due to operating in a highly-regulated industry, and plaintiff cannot expect government regulation to remain the same in perpetuity, "[a]ccording to plaintiff, defendants abandoned their long-standing permitting practices, acted arbitrarily and imposed unjustified and bias-driven restrictions. Given such allegations at this stage of the proceedings, the Court acknowledges the reasonableness of plaintiff's investment-backed expectations"); *OM 309-311 6th St., LLC*, 2022 WL 855769, at *16 (finding character of the government action weighed in favor of taking as facts of the complaint showed "that the Board acted in bad faith and without regard for the law"). Plaintiff's Complaint does not meet the high bar to challenge the application of rent stabilization ordinances as its pleading does not sufficiently allege the Board's action went outside the realm of a normal enforcement of the Ordinance.

Accordingly, Count I of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**B.      Count II (Substantive Due Process)**

Defendants argue Count II of the Complaint should be dismissed as Plaintiff has failed to allege any conduct of the Board that shocks the conscience. (ECF No. 10-1 at 8–11.) Defendants note the standard for alleging conduct which "shocks the conscience" is a high one, and Plaintiff

has not alleged the kind of racial, personal, or political bias which would meet the requirement. (*Id.* at 10.) In particular, "[t]he Complaint does not allege corruption, self-dealing, ethnic bias, or interference with an otherwise protected constitutional activity." (*Id.* at 11.)

Plaintiff argues it has pled both elements of a substantive due process violation, these being (i) that Plaintiff has a legitimate property interest in the unit, and (ii) that Defendants' actions shock the conscience. (ECF No. 17 at 17.) Plaintiff submits the standard for actions which shock the conscience is a fact-specific inquiry, and it is enough for Plaintiff to plead Defendants' actions were intentionally harmful. (*Id.* at 18.) Plaintiff contends that, in certain circumstances, arbitrary and capricious conduct may also shock the conscience. (*Id.* at 18–19.) Plaintiff asserts that numerous factual assertions in the Complaint support a substantive due process claim, including Defendants' failure to consider relevant evidence, notify Plaintiff of hearings, failure to comply with the Ordinance, and failure to otherwise meet with Plaintiff to discuss its concerns. (*Id.* at 20.)

Defendants reply that Plaintiff has failed to allege any "corruption, self-dealing, ethnic bias, . . . interference with an otherwise protected constitutional activity," or conduct otherwise offensive to human dignity against it, meaning Plaintiff does not assert any action which shocks the conscience. (ECF No. 23 at 3–4.)

To substantiate a substantive due process claim under the Fourteenth Amendment, a plaintiff must allege four elements "(i) defendants acted under color of law; (ii) a protected property or liberty interest was at stake; (iii) the defendants had a duty of care toward the plaintiff; and (iv) a deprivation within the meaning of the due process clause occurred." *Roberts v. Mentzer*, 382 F. App'x 158, 166 (3d Cir. 2010). The government conduct underlying a substantive due process claim must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (quoting

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). The determination of whether conduct "shocks the conscience is dependent upon the facts of each particular case." *Roberts*, 382 F. App'x at 166 (quoting *Kaucher*, 455 F. 3d at 425). In the similar context of zoning, the Third Circuit has emphasized the "shocks the conscience" standard is necessarily high to prevent courts serving as appellate divisions for zoning decisions. *Thorpe v. Upper Makefield Twp.*, 758 F. App'x 258, 262 (3d Cir. 2018). Actions which shock the conscience include actions motivated by "self-dealing, government corruption, or racial animus." *Id.* Courts have also found that "actions 'intended to injure in some way unjustifiable by any government interest' are those 'most likely to rise to the conscience-shocking level.'" *Kaucher*, 455 F. 3d. at 426 (quoting *Cnty. of Sacramento*, 523 U.S. at 849). Ultimately, "[t]he level of culpability required for behavior to shock the conscience largely depends on the context in which the action takes place," meaning "where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient" to shock the conscience. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 246 (3d Cir. 2016) (quoting *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006)).

Here, Plaintiff has failed to allege Defendants' actions shocked the conscience, as the Complaint does not claim the Board was motivated by any improper motive when ruling adversely against Plaintiff. Although Plaintiff claims the Board acted arbitrarily and capriciously by ignoring the relevant Ordinance (ECF No. 1 ¶¶ 59, 71–72), these allegations are insufficient to establish a substantive due process violation, as the Complaint details significant consideration of the case and Plaintiff's arguments by the Board through multiple hearings, notices, and resolutions over the course of three years (*id.* ¶¶ 40–61), including a final resolution where "the Board memorialized that it rejected Plaintiff's arguments and submissions" (*id.* ¶ 58). *See Customers Bank v. Mun. of Norristown*, 942 F. Supp. 2d 534, 543 (E.D. Pa. 2013) (holding Defendant's

20

actions did not rise to the level of deliberate indifference because "he did not show conscious disregard for Plaintiffs' property rights"); *Wagner v. Schierer*, Civ. A. No. 23-1162, 2024 WL 264660, at *7 (D. Minn. Jan. 24, 2024) ("That Defendants may have misinterpreted their obligations under the governing regulation 'does not rise to the level of arbitrary government action and egregious misconduct necessary to state a substantive due process claim.'" (quoting *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011))); *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 227–28 (W.D. Pa. 2015) (noting that government conduct or motive "asserted to be arrogant, dismissive, callous or harsh" does not always shock the conscience); *cf. Adhi Parasakthi Charitable, Med., Educ., and Cultural Soc'y of N. Am. v. Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 379–80 (E.D. Pa. 2010) (finding plaintiff's substantive due process claim untenable at motion for summary judgment stage as the "[z]oning Board held eight hearings and issued a thirty-nine page decision in response to Plaintiff's application, which considered and addressed Plaintiff's constitutional claims"). It is not enough for Plaintiff to allege "[t]hat Defendants may have misinterpreted their obligations under the governing regulation," *Wagner*, 2024 WL 264660, at *7, rather, Plaintiff must allege Defendants gave his case no substantive consideration at all. *Customers Bank*, 942 F. Supp. 2d at 543 (holding defendant's actions did not rise to the level of deliberate indifference because "he did not show conscious disregard for Plaintiffs' property rights").

To the extent the Complaint makes conclusory statements regarding the actions of Defendants "not being related to any legitimate government interest" and being taken with knowledge and based on ill will (ECF No. 1 ¶¶ 73–75), the Court finds such statements are not supported by the facts in the Complaint, which does not allege any ulterior motive, knowledge, or ill will attributable to Defendants. Therefore, these statements will be disregarded for the purpose

of the motion to dismiss. *See Iqbal*, 556 U.S. at 678 (noting that, to prevent dismissal, civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible); *Aragon v. Twp. of Woodbridge*, Civ. A. No. 21-18304, 2023 WL 2570146, at *3 (D.N.J. Mar. 20, 2023) (dismissing complaint in part because "the Court is unable to discern what took place; [Plaintiff] fails to allege what series of events lead to his automobile being impounded, what events transpired afterward, or what actions were taken by Defendants to cause an alleged violation of [Plaintiff's] rights"); *Katz v. Ambit Ne., LLC*, Civ. A. No. 20-1289, 2020 WL 5542780, at *4 (D.N.J. Sept. 16, 2020) ("It is not sufficient to make conclusory or broad-brush allegations regarding defendant's conduct; plaintiff must specifically plead those facts.").

Accordingly, Count II of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

### C.      Count III (Procedural Due Process)

Defendants argue Count III of the Complaint should be dismissed as Plaintiff fails to argue the state has inadequate post-deprivation remedies. (ECF No. 10-1 at 11–13.) Defendants assert a procedural due process claim cannot proceed where the state otherwise offers adequate remedies to rectify the legal error of a local administrative body. (*Id.* at 12.) Rather, the claimant is instead expected to avail themselves of those remedies. (*Id.*) Defendants also argue the pre-deprivation process provided to Plaintiff was sufficient, as the Board held multiple hearings, provided notice to Plaintiff of those hearings, heard argument from Plaintiff, and adopted a resolution memorializing its decision. (*Id.* at 13.) Defendants ultimately contend Count III of the Complaint should be dismissed because Plaintiff has neither availed itself of the state's post-deprivation remedies, nor pled their inadequacy. (*Id.*)

Plaintiff argues Defendants engaged in calculated actions to ensure the pre-deprivation procedures provided to Plaintiff did not provide Plaintiff with a meaningful opportunity to

challenge the pre-ordained decision. (ECF No. 17 at 21.) Plaintiff argues much of the Board's decision was made privately without the input of Plaintiff, and that any post-deprivation process provided by the state is irrelevant as the Board had the opportunity to provide a hearing "at a meaningful time and in a meaningful manner." (*Id.* at 21–22.) Plaintiff also argues that it has availed itself of the state's post-deprivation process by filing a claim in lieu of prerogative writ in this case. (*Id.* at 22.)

Defendants reply that Plaintiff was provided both pre- and post-deprivation opportunities to challenge the Board's decision, including multiple hearings and a resolution explaining the decision at the pre-deprivation stage, and an ability to file a complaint in lieu of prerogative writ in state court at the post-deprivation stage. (ECF No. 23 at 4.) Defendants argue Plaintiff failed to avail itself of the opportunity to file an action in state court challenging the decision, meaning it cannot now bring a federal procedural due process claim. (*Id.* at 4–5.)

When analyzing whether a Plaintiff has suffered a procedural due process violation, courts consider "(1) whether the plaintiff has a[n] . . . interest protected by procedural due process, and (2) what procedures constitute due process of law." *Edwards v. Dep't of Hum. Servs.*, Civ. A. No. 16-5623, 2017 WL 1282198, at *2 (D.N.J. Mar. 17, 2017) (quoting *Fanti v. Weinstock*, 629 F. App'x 325, 330 (3d Cir. 2015)). Courts generally deny procedural due process claims when the relevant tribunal has held hearings where the plaintiff was given the chance to be heard, particularly when the plaintiff does not allege any procedural defects in the way the hearings were conducted. *See Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 690 (E.D. Pa. 2017) ("At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998))); *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F.

Supp. 2d 339, 358 (E.D. Pa. 2011) (holding plaintiff had failed to state a procedural due process

violation as three hearings were held by the township); *Pastore v. Cnty. of Santa Cruz*, Civ. A. No.

15-01844, 2024 WL 1057470, at *11 (N.D. Cal. Mar. 11, 2024) (holding plaintiff had not alleged

violation of procedural due process "[b]ecause . . . [plaintiff] was afforded at least one hearing on

each of the two abatement orders at issue, that he personally appeared at hearings on each of the

orders, and that the presiding administrative hearing officer received evidence"); *cf. Srubar v.*

*Rudd, Rosenberg, Mitofsky & Hollender*, 875 F. Supp. 155, 164 (S.D.N.Y. 1994) ("Assuming

arguendo that a tenancy in a rent-controlled apartment is a 'property interest,' plaintiff fails to state

how a holdover proceeding in the Housing Part, which is designed, presumably, to allow plaintiff

to contest the landlord's attempt to evict her, violates the requirements of procedural due process.").

In order to establish a federal procedural due process claim against a state or local

government decision, a plaintiff must plead that the state procedure for challenging the decision

was inadequate to rectify the violation. *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W.*

*Amwell*, 53 F.3d 592, 597 (3d Cir. 1995) (holding that, in order to show a procedural due process

violation "[plaintiff], in addition to proving that a person acting under color of state law deprived

him of a protected property interest, must establish that the state procedure for challenging the

deprivation does not satisfy the requirements of procedural due process"); *see also Strategic Env't*

*Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 127 (D.N.J. 2016) (same); *Halchak v. Dorrance*

*Twp. Bd. of Supervisors*, 646 F. Supp. 3d 571, 594 (M.D. Pa. 2022) ("Accordingly, federal courts

frequently reject procedural due process claims made by plaintiffs who have not fully availed

themselves of potential remedies under state law."); *Harmon v. Borough of Belmar*, Civ. A. No.

17-2437, 2018 WL 11411301, at *8–9 (D.N.J. Feb. 26, 2018) (dismissing procedural due process

claim because "New Jersey provides a judicial process for individuals to contest municipal actions or rulings involving construction").

Here, Plaintiff's procedural due process claim must fail as Plaintiff makes no attempt to allege the "state procedure for challenging the deprivation does not satisfy the requirements of procedural due process." *DeBlasio*, 53 F.3d at 597. Because Plaintiff's Complaint does not allege this element of the claim, Count III of the Complaint should be dismissed on this basis alone. *DeBlasio*, 53 F.3d at 597; *Strategic Env't Partners*, 184 F. Supp. 3d at 127; *Halchak*, 646 F. Supp. 3d at 594; *Harmon*, 2018 WL 11411301, at *8–9. Even if the Court did not dismiss on this basis, Count III of the Complaint would otherwise be dismissed because its factual allegations do not allege Plaintiff was denied an opportunity to be heard. Rather, the Complaint indicates multiple hearings, notices, and resolutions over the course of three years (ECF No. 1 ¶¶ 40–61). Therefore, Plaintiff has failed to allege the Board's pre-deprivation process was insufficient. *See Giuliani*, 238 F. Supp. 3d at 690 (quoting *Abbott*, 164 F.3d at 146); *Sixth Angel*, 790 F. Supp. 2d at 358; *Pastore*, 2024 WL 1057470, at *11; *cf. Srubar*, 875 F. Supp. at 164.

Accordingly, Count III of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

### D.      Supplemental Jurisdiction

Defendants request the Court decline to exercise supplemental jurisdiction over Count IV of the Complaint if it dismisses the other counts. (ECF No. 10-1 at 14.) Since all federal claims have been dismissed in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim in Count IV, which is a claim in lieu of a prerogative writ asking for relief from Defendants' denial of Plaintiff's appeal of their decision.

The Court may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), which permits a court to decline to exercise supplemental jurisdiction where it has "dismissed all

claims over which it has original jurisdiction." *Anstine v. Adams*, 654 F. Supp. 3d 463, 475–76 (M.D. Pa. 2023) ("Given the language of section 1367(c)(3), it appears that dismissal of state-law claims is appropriate on the sole basis that the federal claims have been dismissed."); *Giuliani*, 238 F. Supp. 3d at 709 ("When the district court dismisses all of the claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction."); *Ass'n of New Jersey Rifle and Pistol Clubs, Inc. v. Christie*, 850 F. Supp. 2d 455, 462 (D.N.J. 2012) ("Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction."). In exercising its discretion, the Third Circuit has indicated that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Here, the Court finds no affirmative reason to continue to exercise supplemental jurisdiction over the state law claim, as the Court has given Plaintiff an opportunity to amend the Complaint on the federal claims. Therefore, judicial economy and convenience weigh in favor of Plaintiff submitting a single amended complaint containing both restated federal and state law claims. Plaintiff will have a fair opportunity to restate all claims if and when it submits its amended complaint.

Accordingly, the Court declines to exercise supplemental jurisdiction over Count IV of the Complaint and Count IV of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

### E.    Leave to Amend

Defendants request Plaintiff's Complaint be dismissed with prejudice against them. (ECF No. 10-1 at 5, 14.) The Court grants Plaintiff leave to amend its Complaint as, based on the deficiencies identified in this Opinion, it would not be futile for Plaintiff to amend its Complaint and there is no apparent equitable reason to deny leave to amend, particularly because this would be Plaintiff's first amendment. The Federal Rules of Civil Procedure generally require the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Here, amendment would not be futile as the Plaintiff could provide additional content which may cure the deficiencies in the Complaint, such as further content regarding the intent of the Board, Plaintiff's expectations regarding the regulation of the Property, and the impact of the Board's decision. *See Munenzon v. Peter Advisors, LLC*, 553 F. Supp. 3d 187, 210 (D.N.J. 2021); *see also United States ex rel. Petratos v. Genentech, Inc.*, Civ. A. No. 11-3691, 2014 WL 7331945, at *2 (D.N.J. Dec. 18, 2014) (stating that "within the Third Circuit, even when a complaint is vulnerable to Rule 12(b)(6) dismissal, the district court should allow the party a curative amendment, unless the amendment would be futile or inequitable"); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 653 (E.D. Pa. 2018) ("A court must grant leave to amend absent 'undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility.'" (quoting *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017))). Courts also generally grant leave to amend when a Plaintiff has not yet had a chance to amend the complaint. *See Holmes v. City of Wilmington*, 79 F. Supp. 3d 497, 507–08 (D. Del. 2015) ("There is no evidence that plaintiff has acted improperly or in bad faith, and plaintiff has not yet amended her pleading. The court concludes that at this early stage, and based on the incomplete record currently before it, plaintiff should be granted leave to amend.");

*Talbert v. Corr. Dental Assocs.*, Civ. A. No. 16-1408, 2016 WL 6495124, at *4 (E.D. Pa. Nov. 1, 2016) ("Here, plaintiff has not yet amended his complaint. Therefore, I will grant plaintiff leave to amend his complaint to cure the deficiencies in his complaint."); *Hannivig v. Cnty. of Lackawanna*, Civ. A. No. 16-01514, 2018 WL 3717135, at *5 (M.D. Pa. July 16, 2018) ("Here, given the liberal requirement for leave to amend and because Mr. Hannivig has not yet amended his complaint, we recommend leave to amend.").

Accordingly, Plaintiff is granted leave to amend its Complaint.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 10) is **GRANTED**, and Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**. An appropriate Order follows.


Date: May 31, 2024                                    */s/ Brian R. Martinotti*
                                                       **HON. BRIAN R. MARTINOTTI**
                                                       **UNITED STATES DISTRICT JUDGE**